**Hamp Grace, Petitioner,**

v.

**Joseph HOPPER, Warden, Georgia State Prison, Reidsville, Georgia, Respondent.**

Civ. A. No. 2954–Mac.

United States District Court,
M. D. Georgia,
Macon Division.

Feb. 2, 1977.

Hamp Grace, pro se.

Arthur K. Bolton, Atty. Gen., David L. G. King, Jr., Asst. Atty. Gen., State of Georgia, Atlanta, Ga., for respondent.

OWENS, District Judge:

While the Supreme Court of the United States in 1895 in *Davis v. United States*, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499, decided that in federal criminal trials the prosecution is required to prove every essential element of the crime charged including the mental capacity of the defendant, beyond a reasonable doubt, saying:

We are unable to assent to the doctrine that in a prosecution for murder, the defence being insanity, and the fact of the killing with a deadly weapon being clearly established, it is the duty of the jury to convict where the evidence is equally balanced on the issue as to the sanity of the accused at the time of the killing. On the contrary, he is entitled to an acquittal of the specific crime charged if upon all the evidence there is reasonable doubt whether he was capable in law of committing crime.

No one, we assume, would wish either the courts or juries when trying a case of murder to disregard the humane principle, existing at common law and recognized in all the cases tending to support the charge of the court below, that, "to make a complete crime cognizable by human laws, there must be both a will and an act; " and "as a vicious will without a vicious act is no civil crime, so, on the other hand, an unwarrantable act without a vicious will is no crime at all. So that to constitute a crime against human laws, there must be, first, a vicious will; and, secondly, an unlawful act consequent upon such vicious will." 4 Bl.Com. 21. All this is implied in the accepted definition of murder; for it is of the very essence of that heinous crime that it be committed by a person of "sound memory and discretion," and with "malice aforethought," either express or implied. 4 Bl.Com. 195: 3 Co.Inst. 47; 2 Chitty's Cr.Law, 476. Such was the view of the court below which took care of its charge to say that the crime of murder could only be committed by a sane being, although it instructed the jury that a reasonable doubt as to the sanity of the accused would not alone protect him against a verdict of guilty.

One who takes human life cannot be said to be actuated by malice aforethought, or to have deliberately intended to take life, or to have "a wicked, depraved, and malignant heart," or a heart "regardless of social duty and fatally bent on mischief," unless at the time he had sufficient mind to comprehend the criminality or the right and wrong of such an act. Although the killing of one human being by another human being with a deadly weapon is presumed to be malicious until the contrary appears, yet, "in order to constitute a crime, a person must have intelligence and capacity enough to have a criminal intent and purpose; and if his reason and mental powers are either so deficient that he has no will, no conscience, or controlling mental power, or if, through the overwhelming violence of mental disease, his intellectual power is for the time obliterated, he is not a responsible moral agent, and is not punishable for criminal acts." *Com. v. Rogers*, 7 Met. (Mass.) 500 [41 Am.Dec. 458]. Neither in the adjudged cases nor in the elementary treatises upon criminal law is there to be found any dissent from these general propositions. *All admit that the crime of murder necessarily involves the possession by the accused of such mental capacity as will render him criminally responsible for his acts.* (emphasis added).

Upon whom then must rest the burden of proving that the accused, whose life it is sought to take under the forms of law, belongs to a class capable of committing crime? On principle, it must rest upon those who affirm that he has committed the crime for which he is indicted. That burden is not fully discharged, nor is there any legal right to take the life of the accused, until guilt is made to appear from all the evidence in the case. The plea of not guilty is unlike a special plea in a civil action, which, admitting the case averred, seeks to establish substantive ground of defence by a preponderance of evidence. It is not in confession

and avoidance, for it is a plea that controverts the existence of every fact essential to constitute the crime charged. Upon that plea the accused may stand, shielded by the presumption of his innocence, until it appears that he is guilty; and his guilt cannot in the very nature of things be regarded as proved, if the jury entertain a reasonable doubt from all the evidence whether he was legally capable of committing crime.

This view is not at all inconsistent with the presumption which the law, justified by the general experience of mankind as well as by considerations of public safety, indulges in favor of sanity. If that presumption were not indulged the government would always be under the necessity of adducing affirmative evidence of the sanity of an accused. But a requirement of that character would seriously delay and embarrass the enforcement of the laws against crime, and in most cases be unnecessary. Consequently the law presumes that every one charged with crime is sane, and thus supplies in the first instance the required proof of capacity to commit crime. It authorizes the jury to assume at the outset that the accused is criminally responsible for his acts. But that is not a conclusive presumption, which the law upon grounds of public policy forbids to be overthrown or impaired by opposing proof. It is a disputable or, as it is often designated, a rebuttable presumption resulting from the connection ordinarily existing between certain facts—such connection not being "so intimate, nor so nearly universal, as to render it expedient that it should be absolutely and imperatively presumed to exist in every case, all evidence to the contrary being rejected; but yet it is so general, and so nearly universal, that the law itself, without the aid of a jury, infers the one fact from the proved existence of the other, in the absence of all opposing evidence." 1 Greenl.Ev. § 38. It is therefore a presumption that is liable to be overcome or to be so far impaired in a particular case that it cannot be safely or properly made

the basis of action in that case, especially if the inquiry involves human life. In a certain sense it may be true that where the defence is insanity, and where the case made by the prosecution discloses nothing whatever in excuse or extenuation of the crime charged, the accused is bound to produce some evidence that will impair or weaken the force of the legal presumption in favor of sanity. *But to hold that such presumption must absolutely control the jury until it is overthrown or impaired by evidence sufficient to establish the fact of insanity beyond all reasonable doubt or to the reasonable satisfaction of the jury, is in effect to require him to establish his innocence, by proving that he is not guilty of the crime charged.* (emphasis added).

\* \* \* \* \* \*

Strictly speaking, the burden of proof, as those words are understood in criminal law, is never upon the accused to establish his innocence or to disprove the facts necessary to establish the crime for which he is indicted. It is on the prosecution from the beginning to the end of the trial and applies to every element necessary to constitute the crime. Giving to the prosecution, where the defence is insanity, the benefit in the way of proof of the presumption in favor of sanity, the vital question from the time a plea of not guilty is entered until the return of the verdict, is whether upon all the evidence, by whatever side adduced, guilt is established beyond reasonable doubt. If the whole evidence, including that supplied by the presumption of sanity, does not exclude beyond reasonable doubt the hypothesis of insanity, of which some proof is adduced, the accused is entitled to an acquittal of the specific offence charged. His guilt cannot be said to have been proved beyond a reasonable doubt—his will and his acts cannot be held to have joined in and perpetrating the murder charged—if the jury, upon all the evidence, have a reasonable doubt whether he was legally capable of committing crime, or (which is the same thing)

whether he wilfully, deliberately, unlawfully, and of malice aforethought took the life of the deceased. As the crime of murder involves sufficient capacity to distinguish between right and wrong, the legal interpretation of every verdict of guilty as charged is that the jury believed from all the evidence beyond a reasonable doubt that the accused was guilty, and was therefore responsible, criminally, for his acts. How then upon principle or consistently with humanity can a verdict of guilty be properly returned, if the jury entertain a reasonable doubt as to the existence of a fact which is essential to guilt, namely, the capacity in law of the accused to commit that crime?

\* \* \* \* \* \*

It seems to us that undue stress is placed in some of the cases upon the fact that, in prosecutions for murder the defence of insanity is frequently resorted to and is sustained by the evidence of ingenious experts whose theories are difficult to be met and overcome. Thus, it is said, crimes of the most atrocious character often go unpunished, and the public safety is endangered. But the possibility of such results must always attend any system devised to ascertain and punish crime, and ought not to induce the courts to depart from principles fundamental in criminal law, and the recognition and enforcement of which are demanded by every consideration of humanity and justice. No man should be deprived of his life under the forms of law unless the jurors who try him are able, upon their consciences, to say that the evidence before them, by whomsoever adduced, is sufficient to show beyond a reasonable doubt the existence of every fact necessary to constitute the crime charged.

and while it refused—Justices Frankfurter and Black dissenting—in 1952 in *Leland v. Oregon*, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302, to hold that the due process clause of the Fourteenth Amendment requires the states of these United States to prove every essential element of the crime charged, including the mental capacity of the defendant, beyond a reasonable doubt, it proceeded just eighteen years later after discussing the court's previous cases reviewing federal and state criminal convictions and using language strikingly similar to the dissents in *Leland* to unequivocally answer the question of whether or not due process requires proof beyond a reasonable doubt as follows:

> ■ Lest there remain any doubt about the constitutional stature of the reasonable-doubt standard, we explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.

*In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375. So it is that while proof beyond a reasonable doubt had dated "at least from our early years as a Nation," *Id.* at 360, 373, 90 S.Ct. at 1071, it was for the first time in 1970 explicitly determined by the Supreme Court to be a constitutional requirement.

*In re Winship* was amplified and further explained in the Supreme Court's June 9, 1975, decision in *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508.

The question before the Supreme Court was whether or not the "State of [Maine's] require[ment that] a defendant charged with murder prove that he acted 'in the heat of passion on sudden provocation' in order to reduce the homicide to manslaughter. . . . comports with the due process requirement, as defined in *In re Winship* . . . ." "*Id.* at 685, 95 S.Ct. at 1882, 44 L.Ed.2d at 511.

The court after reviewing the decisions below in the courts of the State of Maine, the United States District Court for Maine and the United States Court of Appeals for the First Circuit in which there were sharp differences of opinion as to whether or not murder and manslaughter were separate offenses under the law of Maine, first re-

minded that "this Court, however, repeatedly has held that state courts are the ultimate expositors of state law . . . and that we are bound by their constructions except in extreme circumstances not present here. . . .", secondly "accept[ed] as binding the Maine Supreme Judicial Court's construction of state homicide law. . . ."; and then summarized Maine's law as construed by its highest court as follows:

Absent justification or excuse, all intentional or criminally reckless killings are felonious homicides. Felonious homicide is punished as murder—i.e., by life imprisonment—unless the defendant proves by a fair preponderance of the evidence that it was committed in the heat of passion on sudden provocation, in which case it is punished as manslaughter—i.e., by a fine not to exceed $1,000 or by imprisonment not to exceed 20 years. *Id.* at 691, 95 S.Ct. at 1886, 44 L.Ed.2d at 515.

After reviewing the historical development at common law and in this country of the elements of murder and manslaughter and after specifically pointing out that the Supreme Court in 1895 in *Davis v. United States, supra,* a review of a lower federal court case, had already unanimously rejected the concept of malice which requires a defendant to negate malice aforethought by proving by a preponderance of the evidence that he acted in the heat of passion so as to cause him to be convicted of manslaughter rather than murder, *Id.* at 695, 95 S.Ct. at 1888, 44 L.Ed.2d at 517; the court stated (1) that almost from the inception of the law of homicide the presence or absence of heat of passion on sudden provocation has been "the single most important factor in determining the degree of culpability attaching to an unlawful homicide" and (2) "the clear trend has been toward requiring the prosecution to bear the ultimate burden of proving this fact." *Id.* at 696, 95 S.Ct. at 1888, 44 L.Ed.2d at 517.

The court discussed and rejected the state's argument that *In re Winship* should be applied only to those facts which, if not proved, would wholly exonerate the defendant and further argument that heat of passion on sudden provocation is not a fact necessary to constitute the crime of murder in Maine. It went on to state:

Maine has chosen to distinguish those who kill in the heat of passion from those who kill in the absence of this factor. Because the former are less "blameworth[y]," *State v. Lafferty,* [Me.,] 309 A.2d, [647] at 671, 673 (concurring opinion), they are subject to substantially less severe penalties. By drawing this distinction, while refusing to require the prosecution to establish beyond a reasonable doubt the fact upon which it turns, Maine denigrates the interests found critical in *Winship. Id.* 421 U.S. at 697, 95 S.Ct. at 1889, 44 L.Ed.2d at 519.

The Supreme Court of Georgia in refusing to apply *In re Winship* and *Mullaney v. Wilbur* to petitioner Grace's case stated:

These United States Supreme Court cases persuade us that in order to comport with due process the prosecution must carry the burden of proving all critical essential elements of the crime charged against a defendant. However, sanity has not been treated as a critical essential element of the offense which the prosecution is required to prove beyond a reasonable doubt. *Grace v. Hopper,* 234 Ga. 669, 671, 217 S.E.2d 267, 269.

The Supreme Court of Georgia also thought it significant that *Leland v. Oregon* was not specifically overruled in *In re Winship* or *Mullaney v. Wilbur* and that Mr. Justice Rehnquist joined by Chief Justice Burger stated that they saw no inconsistency between the court's unanimous holding and *Leland v. Oregon.* This court notes that the possible inconsistency was not an issue in the case and further notes footnote 31 to the court's unanimous opinion which states:

31. This conclusion is supported by consideration of a related line of cases. Generally in a criminal case the prosecution bears both the production burden and the

persuasion burden. In some instances, however, it is aided by a presumption, see *Davis v. United States,* 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895) (presumption of sanity), or a permissible inference, see *United States v. Gainey,* 380 U.S. 63, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965) (inference of knowledge from presence at an illegal still). These procedural devices require (in the case of a presumption) or permit (in the case of an inference) the trier of fact to conclude that the prosecution has met its burden of proof with respect to the presumed or inferred fact by having satisfactorily established other facts. Thus, in effect they require the defendant to present some evidence contesting the otherwise presumed or inferred fact. See *Barnes v. United States,* 412 U.S. 837, 846 n.11, 93 S.Ct. 2357, 2363, 37 L.Ed.2d 380 (1973). Since they shift the production burden to the defendant, these devices must satisfy certain due process requirements. See e.g., *Barnes v. United States,* supra; *Turner v. United States,* 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970).

In each of these cases, however, the ultimate burden of persuasion by proof beyond a reasonable doubt remained on the prosecution. See, e.g., *Barnes v. United States,* supra, [412 U.S.] at 845 n.9, 93 S.Ct. [2357] at 2362, 37 L.Ed.2d 380; *Davis v. United States,* supra, [160 U.S.] at 484–488, 16 S.Ct. [353] at 356–358, 40 L.Ed. 499. Shifting the burden of persuasion to the defendant obviously places an even greater strain upon him since he no longer need only present some evidence with respect to the fact at issue; he must affirmatively establish that fact. Accordingly, the Due Process Clause demands more exacting standards before

the State may require a defendant to bear this ultimate burden of persuasion. See generally Ashford & Risinger, Presumptions, Assumptions, and Due Process in Criminal Cases: A Theoretical Overview, 78 Yale L.J. 165 (1969).

Under Georgia law as construed heretofore by the Supreme Court of Georgia in its said denial of petitioner's writ of habeas corpus, sanity is not an element that must be proved by the State to establish the crime of murder because as the trial court charged petitioner's jury "under the law of this state every person is presumed to be of sound mind and discretion  .  .  .", and "  .  .  .  the acts of a person of sound mind and discretion are presumed to be the product of that person's will.  .  .  ." Transcript at 111. Nevertheless the absence of a sound mind and discretion[1] the same as being under 13 years of age, involuntarily intoxicated or laboring under a misapprehension of fact, Ga.Code Ann. §§ 26–701, 704 and 705, eliminates all responsibility under the laws of Georgia for murder as well as all other crimes.

Under the law of Maine the evidence as to which the burden of proof was placed upon a defendant, had the effect of reducing the crime charged from that of murder to that of manslaughter thereby diminishing the maximum possible punishment from life imprisonment to imprisonment for 20 years. Under the law of Georgia evidence of legal irresponsibility on account of lack of mental capacity—herein and elsewhere commonly called insanity—as to which the burden of proof was placed upon petitioner Grace, has the much greater effect of not just reducing the crime of murder and its then possible punishment of life imprisonment to some lesser crime and punishment but of completely eliminating all criminal

---

1. Ga.Code Ann. § 26–702 provides:

A person shall not be found guilty of a crime, if at the time of the act, omission, or negligence constituting the crime, such person did not have mental capacity to distinguish between right and wrong in relation to such act, omission, or negligence.

Ga.Code Ann. § 26–703 provides: A person shall not be found guilty of a crime when at the time of the act, omission, or negligence constituting the crime, such person, because of mental disease, injury, or congenital deficiency, acted as he did because of a delusional compulsion as to such act which overmastered his will to resist committing the crime.

charges and all possible criminal punishment for the act in question.

To paraphrase the Supreme Court's concluding paragraph in *Mullaney*, Georgia law requires a defendant to establish to the reasonable satisfaction of the jury that he lacked mental capacity and therefore cannot be found guilty of murder or any other crime. Under this burden a defendant at the time of petitioner's alleged crime could be given a life sentence—now[2] could receive capital punishment—in the courts of this state when the evidence indicates it is as likely as not that he deserves to be found to be not criminally responsible on account of lack of mental capacity to commit any crime.

This is an intolerable result in a society where, to paraphrase Mr. Justice Harlan, it is far worse to sentence one guilty only of manslaughter as a murderer than to sentence a murderer for the lesser crime of manslaughter. *In re Winship*, 397 U.S. at 372, 90 S.Ct. [1068] at 1076, 25 L.Ed.2d 368 (concurring opinion). *Mullaney, supra*, 421 U.S. at 703, 95 S.Ct. at 1892, 44 L.Ed.2d at 522.

It is therefore this court's opinion that the Due Process Clause as interpreted and applied by the Supreme Court of the United States requires the prosecution in the courts of the State of Georgia when there is some evidence contesting the mental capacity of the defendant to be convicted of the crime of murder or any other crime, to prove beyond a reasonable doubt that the defendant has the mental capacity required by Georgia law to be convicted of murder or any other crime.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that petitioner's conviction be set aside and that petitioner within ninety (90) days after this order becomes final as a result of the failure of respondent to lodge an appeal or as the result of the issuance of a mandate affirming this decision, whichever is later, be reindicted and constitutionally tried failing

which this writ of habeas corpus without further order shall be made absolute and petitioner shall be released from custody.

---

2. *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).