**Martin AMADOR BELTRAN, Defendant, Appellant,**

v.

**UNITED STATES of America,** Appellee (three cases).

Nos. 5891–5893.

United States Court of Appeals First Circuit.

April 20, 1962.

Gerardo Ortiz del Rivero, San Juan, P. R., for appellant.

Francisco A. Gil, Jr., U. S. Atty., with whom Gilberto Gierbolini Ortiz, Asst. U. S. Atty., was on brief, for appellee.

Before MAGRUDER,* ALDRICH and SMITH,* Circuit Judges.

ALDRICH, Circuit Judge.

The appeals in these cases involve judgments of conviction of the defendant for various narcotics offenses. At the trial defendant admitted the factual evidence against him, but pleaded not guilty by reason of insanity. Following waiver by the defendant of the right of trial by jury, the trial judge found him guilty on all counts and imposed concurrent sentences for the various offenses. At the outset counsel raises a question here for the first time with relation to defendant's competency to stand trial, not that he was not then competent, nor that the court was asked and refused to determine his competency, but that the court should have conducted a hearing on this subject sua sponte. This is the same counsel who had represented to the court that his client was competent by permitting him to waive jury, and whose expert, the same one who had given the previous opinion as to incompetency, was ready to and did testify at the trial that

* Sitting by designation.

the defendant was presently in remission and competent.

■■ We are not disposed to follow defendant's case of Gunther v. United States, 1954, 94 U.S.App.D.C. 243, 215 F.2d 493. The court there conceded that 18 U.S.C. § 4244 does not specifically require a second hearing, but found such obligation in the common law duty of the court always to be satisfied that a defendant is competent to stand trial. The argument proves too much. There can be no affirmative duty to investigate unless the court is on notice that something is amiss. Where the most recent word was a well-qualified medical report of present competency, an earlier contrary report does not seem to us to put the court on notice with respect to the present even though the court had endorsed an earlier report by formally finding it to be correct. If anyone has a basis for questioning a current report of competency, it is just as possible to make a second motion under section 4244 as it was to make the first. But even if it could be said that there was a duty to conduct a second hearing, any error in the case at bar was manifestly unprejudicial in view of the conceded facts. See Gunther v. United States, supra, 215 F. 2d at 497. Our time should not have been wasted by this wholly frivolous complaint.

The background of these cases is as follows. In September 1958 defendant was indicted for narcotics offenses allegedly committed in March, April and July 1958. He was then released on bail. In November counsel filed a motion under 18 U.S.C. § 4244 for determination of defendant's mental competency to understand the proceedings against him and properly assist in his own defense. The court granted the motion the following January and appointed a Dr. Seneriz, a qualified psychiatrist frequently retained by the Veterans Administration, to examine him. Commencing in February and continuing from time to time through August 25, 1959, Dr. Seneriz made ambulatory oral examinations of the defendant at his office. On August 28 the doctor filed a certificate that the defendant was suffering from "Schizophrenic reaction, paranoid type, chronic, severe; mentally incompetent." At the ensuing hearing the doctor explained that by incompetent he meant "incompetent in contemplation of the law. That is, he cannot distinguish between right and wrong." Thereafter the court made findings in accordance with the motion and ordered the defendant committed for further examination and treatment. The first confinement was at the Public Health Service Hospital at Lexington, Kentucky, where Dr. Seneriz's diagnosis was confirmed. In February 1960 the defendant was transferred to the Medical Center at Springfield, unimproved. On April 20 his condition was diagnosed as relatively quiescent, and in June it was concluded that he was in "relatively early remission from a severe psychotic decompensation." As a result the defendant was released from Springfield as competent to stand trial, and was brought to trial by the court in October.

In the meantime, on August 11, 1959, the defendant had been indicted for further narcotics offenses allegedly committed in May 1959 and on August 3, 1959. In October 1960, shortly before trial, he was indicted for a further offense committed on September 11, 1959. By stipulation the first two indictments were tried together, and later the third was added. The trial commenced with a skeleton stipulation of facts. With respect to most of the counts the stipulation was merely that the defendant was caught in the act of making sales of heroin, or with heroin in his possession, without a license. Because the government makes much of it in argument, we will refer in detail to the events of August 3, 1959, the only date as to which full facts were given. Government agents, armed with a warrant, knocked on the door of defendant's home, but were not admitted. They broke down the door and, attracted by the flushing of a toilet, noted that the bathroom door was locked. On seeking admission they

were informed by the defendant from within that his "wife was occupied." This door, too, was broken down. The lady was forcibly removed from the toilet, in which she was found to be endeavoring to conceal decks of heroin.

Dr. Seneriz testified on behalf of the defendant that on all the dates mentioned in the indictments he had been suffering from a psychotic reaction, paranoic type, and was "mentally incompetent in contemplation of the law." "Q. He did not know what he was doing?" "He would not be able to pass a judgment about what he was doing." While the doctor did not use the specific phrase "unable to distinguish between right and wrong," the court apparently recalled his prior testimony, because later during the trial, on three occasions, the court referred to the doctor's testimony as meaning precisely that. On cross-examination the doctor stated that he had not given a number of specific tests inquired about by the government, admitted that the defendant was "in a period of lucidity right now," and agreed that he "might" have been on a partial remission on some of the indictment dates. He remained firm, however, in his opinion that he had not been.

It further appeared that the defendant had been confined at Bellevue, and thereafter at he Matteawan State Hospital, in New York from 1950 to 1956, following which the Veterans Administration had arranged for his mother to be appointed his guardian. His mother testified as to his peculiarities. We will pass over this testimony, except to say that it was of no help to the government. The defendant then rested. The government offered no evidence.

At the conclusion of the trial the court stated that it would reserve judgment, but in the meantime would make a few comments. It stated that it was "not at all convinced by the testimony of Dr. Seneriz" because it did not believe his examination had been sufficient to permit a diagnosis. "Moreover, he spoke about these partial remissions. * * * Dr. Seneriz says that he can not say that dur-

ing the dates alleged in the * * * indictments, whether this defendant could have been undergoing a period of what he called 'partial remission'; that he could have been, or could not have been, under partial remission. * * * He further said that during a period of partial remission an individual can distinguish between right and wrong, which is the test under the Federal rule to determine whether a man is competent to commit a crime or not." Thereafter the court made a formal finding of sanity, the full substance of which was as follows. "The defendant [does not fall] within the M'Naghten Rule. None of the experts said that he would be unable to distinguish between right and wrong, which is the Federal test. * * * *and therefore* the court finds and concludes that the defendant was not mentally incompetent to distinguish between right and wrong when he committed the acts charged." (Italics supplied)

We are puzzled by these statements. Only one expert testified at the trial, namely, Dr. Seneriz. If by using the plural the court was referring to the government doctors who had reported on the defendant's progress while undergoing treatment, such reference was irrelevant. It is true that none of them stated that the defendant could not distinguish between right and wrong. However, their opinions related only to the dates of examination, and not the dates of the alleged offenses. Even as to the dates of examination the question was not whether the defendant could tell right from wrong, but was his ability to stand trial. Their findings do not assist the government in any particular except as to the defendant's remission commencing in June of 1960. On the other hand as to Dr. Seneriz, who did express an opinion as to the dates in the indictments, the court was clearly in error for the reasons we have already set forth.

██ The court's remarks at the end of the hearing were equally erroneous. Whether Dr. Seneriz's examination of the defendant was adequate or inadequate was not for lay determination in

the absence of any medical testimony. The court possessed no independent proficiency in such matters. Moreover, we cannot help noting that Dr. Seneriz's evaluation of the defendant's condition in August 1959 was precisely the condition found to exist by two government hospitals for the ensuing eight months. Nor was it accurate to characterize his testimony as no more than that the defendant "could have been, or could not have been, under partial remission." His opinion was substantially stronger than that. The fact that he conceded the possibility of error was no more than might be expected of any expert. Whether the court was free to disagree with the doctor is another question, but to suggest that his opinion was in effect equivocal was unwarranted.

■ ■ The introduction of evidence of insanity places a burden on the government of proving sanity beyond a reasonable doubt. Davis v. United States, 1895, 160 U.S. 469, 16 S.Ct. 353, 40 L. Ed. 499. This burden cannot be spirited away by the simple method proposed by the government of the court's saying it does not believe the evidence, therefore there is no evidence, therefore there is no burden. It should be apparent that such thinking would render the whole principle meaningless. Rather, the record must be looked at as a whole, with the burden on the government to overcome any reasonable doubt.

■ The defendant did not move for an acquittal under Rule 29, Fed.Rules Crim.Proc. 18 U.S.C. We question whether the "plea of not guilty," renders such a motion an unnecessary technicality in a jury-waived case. Hall v. United States, 5 Cir., 1960, 286 F.2d 676, 677,

cert. den. 366 U.S. 910, 81 S.Ct. 1087, 6 L.Ed.2d 236. However, even if the motion had been made we are not obliged to order an acquittal if there was insufficient evidence to meet the government's burden. Bryan v. United States, 1950, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335. We think such a disposition should be made by us only if it seems reasonably apparent that the government could not better itself on a new trial. See, e. g., Carr v. United States, 6 Cir., 1960, 278 F.2d 702. We might remark, however, that we find the present record thin almost to the vanishing point, if not beyond.[1] In spite of the government's argument on which it lays particular stress, we regard the bathroom incident as an insubstantial indication that the defendant appreciated the difference between right and wrong except, perhaps, in the field of good manners. For present purposes, however, it is sufficient to say that the court's particular findings are unsupportable. Although it may sometimes be appropriate to affirm the district court on a question of law for reaching the right result although for a wrong reason, this is not to be done when the issue is factual. In such case that court's primary obligation to make findings has not been accomplished.[2] There must be a new trial.

The defendant contends, in anticipation of a new trial, that the M'Naghten Rule is no longer the proper test of criminal responsibility. We do not care to pass on this broad issue on a bare record. However, we commend to the district court's attention cases such as United States v. Currens, 3 Cir., 1961, 290 F.2d 751, and request that on the new trial, if it determines the defendant could properly distinguish between right and wrong, it nevertheless make further

1. See, e. g., United States v. Westerhausen, 7 Cir., 1960, 283 F.2d 844; Fitts v. United States, 10 Cir., 1960, 284 F.2d 108. Our citation of these cases does not, under the circumstances, mean that they have our present approval.

2. In the case at bar the total findings were, (a) that Dr. Seneriz made an inadequate examination (if this could be termed a finding as distinguished from a preliminary observation); (b) that no expert said the defendant could not tell right from wrong; (c) that "therefore the Court finds and concludes that the defendant was not mentally incompetent." Striking down (a), as we do, and (b), as in any event we must, there is no present support left for (c).

findings so that we may, if need be, give consideration to this matter.

Judgment will be entered vacating the findings and judgments of the District Court and remanding the cases for further proceedings not inconsistent herewith.

MAGRUDER, Circuit Judge (dissenting).

I disagree with my brethren as to the proper disposition of these cases, but our disagreement is a narrow one.

I understand we are in agreement as to the so-called presumption of sanity. It is clear that the government does not have the initial burden of proof beyond a reasonable doubt to establish that the defendant was sane at the time of the commission of the acts. See Davis v. United States, 160 U.S. 469, 16 S.Ct. 353, 40 L.Ed. 499 (1895). If the defendant wishes to raise the issue of his sanity, he has the burden of going forward with the evidence. Only if he maintains this burden of going forward with the evidence, which evidence, if believed, tends to rebut the "logical core"—the inferring of the accused's sanity—does the government have the ultimate burden of proof beyond a reasonable doubt that the defendant was legally responsible when the criminal acts were committed. And I suppose that the majority opinion would agree, at least in principle, that this burden of the defendant to go forward with the evidence is a burden of showing that he was mentally irresponsible, not at some time in his life, but on the dates of the commission of the unlawful acts.

The court also is in accord that there is nothing to appellant's claim that he should not have been brought to trial under 18 U.S.C. § 4244 without a formal hearing by the trial judge sua sponte on the subject of his mental competency to stand trial.

The majority opinion also accepts the obvious contrast in 18 U.S.C. § 4244 between the accused's mental competency at the time of the trial with his mental competency at the time of the commis-

sion of the alleged criminal acts. Whether or not the defendant is so mentally incompetent as to be legally irresponsible so far as the substantive offenses are concerned, he is not to stand trial, if the judge determines, after a hearing, that he is "so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense." Of course, a finding by the judge that the accused is "mentally competent to stand trial" does not necessarily indicate his guilt or innocence on the subject of his immunity to conviction for the substantive offenses because of his mental incompetency. This may be the reason why the Congress provided in the last sentence of the section: "A finding by the judge that the accused is mentally competent to stand trial shall in no way prejudice the accused in a plea of insanity as a defense to the crime charged; such finding shall not be introduced in evidence on that issue nor otherwise be brought to the notice of the jury."

Our only difference is as to the effect of the statements by the medical expert, Dr. Seneriz, who testified also at the preliminary hearing conducted by the trial judge, and whose testimony was the basis of the trial judge's finding that the accused was then not competent to stand trial.

On the point of the defendant's criminal responsibility for the substantive offenses, the defense called as an expert witness only Dr. Seneriz. Apparently defendant believed that, because Dr. Seneriz had said at the hearing on September 16, 1959, that in his opinion the defendant was mentally incompetent to stand trial under 18 U.S.C. § 4244, this expert would certify at the trial that the accused was criminally irresponsible at the various dates mentioned in the indictments. Dr. Seneriz testified that he examined the patient for about an hour at a time on several occasions at his office from February, 1959, to August, 1959. In answer to a question by the court, "He is in a period of lucidity right now, is that right?", the doctor an-

swered, "That is correct." The doctor spoke about a "partial remission" of the symptoms of schizophrenia.

It is true that, on redirect examination by counsel for the defendant, Dr. Seneriz stated that in his "feeling," "based on the symptoms I found during the time I examined him," he was insane or mentally incompetent on the specific dates listed in the indictments. However, on cross-examination he clarified his remark by saying that the only scientific way of making a specific determination with any degree of certainty would be to examine the patient a few days prior to or a few days after the fact. Conceivably the nearness of the doctor's examination of the patient to the date given in the third indictment might be acceptable, but if there was error in the district judge's finding that the accused was guilty of the offenses charged in this indictment, it follows that on familiar principles this error becomes moot in view of the fact that without doubt the dates named in the first indictment were too remote, and the judge imposed concurrent sentences upon all the counts.

As appears from the statement of facts, a jury was waived in these cases and the trial judge thereby became the trier of the facts. The trier of the facts found that the accused "was not mentally incompetent" at the time he committed the acts recounted in the indictments and therefore that he was guilty of the charges they contained. In making this finding it is clear that the court did not accept without question the testimony of Dr. Seneriz because he thought that Dr. Seneriz had given only a superficial examination of the patient. The trial judge said:

> "I am not at all convinced by the testimony of Dr. Seneriz. It leaves many things in doubt. I believe the examination he made of this defendant was not exhaustive enough to permit a diagnosis such as the one he said that he made. He only gave from 12 to 15 hours for the examination of this defendant during a period of six months. That is barely

two hours per month, which means that perhaps he saw him 15 minutes one day, and then he didn't see him in 10 days, and so I don't believe that a psychiatric examination to determine insanity, the way that Dr. Seneriz testified, can permit a diagnosis the way he said he had arrived at that diagnosis. Moreover, he spoke about these partial remissions."

I do not believe that under the circumstances the court was required to accept the findings of this expert. I am not prepared to find, as apparently are my colleagues, that this finding by the trial judge was without the support of substantial evidence. See United States v. Owen, 231 F.2d 831, 833 (C.A.7th, 1956), cert. denied 352 U.S. 843, 77 S.Ct. 42, 1 L.Ed.2d 59 (1956).