**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0057n.06

**No. 08-5076**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jan 28, 2010**
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,                )
                                         )
    Plaintiff-Appellee,              )
                                         )
    v.                               )
                                         )
RANDALL D. WILLIS,                       )
                                         )
    Defendant-Appellant.             )
                                         )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF KENTUCKY

BEFORE:  NORRIS, COOK, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Randall Willis was convicted by a jury on multiple counts of conspiracy to distribute, possession with intent to distribute, and distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846; possession of a firearm in furtherance of a drug trafficking offense and possession of an unregistered short-barreled shotgun, in violation of 18 U.S.C. § 924(c)(1) and 26 U.S.C. § 5861(d); and being a felon in possession of a firearm, contrary to 21 U.S.C. §§ 922(g)(1) and 924(e)(1).  On appeal, Willis challenges the district court's determination that he was competent to stand trial.  Willis also argues that his within-Guidelines sentence is substantively and procedurally unreasonable because the district court failed to grant a downward departure in light of his diminished mental capacity.  We disagree and affirm.

I.

The facts of this case are not in dispute. On March 2, 2006, a federal grand jury in Lexington, Kentucky, returned a thirteen-count indictment charging numerous drug-related and weapons offenses against Willis and another individual. The indictment stemmed from an investigation by the Kentucky State Police into Willis's illegal trafficking of narcotics. From March 2005 through November 2005, the police, with the assistance of a confidential informant, conducted four controlled purchases of cocaine from Willis and his cohort. A search warrant was executed on December 1, 2005, at Willis's residence, yielding drug paraphernalia, a loaded sawed-off shotgun, assorted ammunition, marijuana, four plastic baggies containing cocaine residue, and twenty-one pit bulls, five of which were dead.

Willis entered a plea of not guilty to the charges. Shortly before his jury trial was scheduled to begin, defense counsel raised concerns about Willis's mental state and filed a motion for a competency hearing. The district court granted the motion and ordered a psychological evaluation of Willis. Willis was committed to the Federal Medical Center in Lexington, Kentucky, and, following a two-month evaluation, the examining psychologist recommended that Willis was incompetent to stand trial. In a September 2006 forensic report, the psychologist noted that Willis exhibited odd behavior by, inter alia, pacing for hours in a circular pattern and talking to himself as if he heard voices. Willis expressed paranoid delusions about local law enforcement officials and irrational beliefs about the identity of an arresting officer and the reasons for his arrest. The psychologist provisionally diagnosed Willis with a psychotic disorder that significantly impaired his reasoning. However, the psychologist noted the possibility that Willis was "malingering or

pretending mental illness in order to avoid prosecution." The psychologist opined that further treatment was warranted and that Willis's symptoms should improve with the use of anti-psychotic medication. There was "a substantial probability [Willis] will attain the capacity to permit a trial to proceed in the foreseeable future" if treated and stabilized.

At a subsequent competency hearing in October 2006, the district court determined, on the basis of the forensic report, that Willis was not competent to stand trial and committed him to the Bureau of Prisons for further evaluation. A team of mental health professionals monitored Willis at the Federal Medical Center in Butner, North Carolina, from December 2006 until April 2007. The evaluators opined at the end of this time period that Willis was competent to stand trial; his psychotic symptoms were in remission, and he was now able to understand the nature and consequences of the proceedings against him and assist in his defense. These findings were incorporated in a May 2007 forensic report, accompanied by a certificate of restoration of competency to stand trial filed in accordance with 18 U.S.C. § 4241(e). In the report, the evaluators identified one point of concern – Willis still "verbalized a possible delusional, persecutory belief that the charges could be dropped because they were based on the false allegations of a person posing as an arresting officer." However, Willis also demonstrated the ability to function at a high level in a structured environment, and he interacted appropriately with staff and peers. Most importantly, Willis exhibited a "rational and realistic understanding of his charges and ability to consult with his attorney" and "was able to discuss the options available to him as a defendant in a criminal case in a lucid and organized

manner." It was therefore the opinion of the evaluators that Willis was not suffering from any mental disease rendering him incompetent to stand trial.

In July 2007, upon receipt of the second report, the district court conducted another competency hearing. The district court stated that it had reviewed the May 2007 forensic report and found, consistent with the evaluation, that Willis was competent to stand trial. The prosecutor and defense counsel both concurred in this ruling. Specifically, defense counsel informed the court that he had consulted with Willis prior to the hearing and was of the opinion that Willis understood the nature of the charges against him and could assist with his defense.

The case proceeded to trial in October 2007. The jury found Willis guilty on seven counts of drug and weapons offenses. At sentencing, the district court took into account Willis's criminal history category of VI, his classification as an armed career criminal and career offender, and the recommended sentencing Guidelines range of 360 months to life imprisonment, before it imposed a sentence of life imprisonment. Willis now timely appeals his convictions and sentence.

II.

Willis first challenges the district court's determination that he was competent to stand trial. He contends that, in light of notations in the May 2007 forensic report that the delusional behavior identified in the September 2006 forensic report persisted, the district court should have conducted a more comprehensive evidentiary hearing and appointed an independent psychologist to review the records and evaluate Willis. Willis further maintains that the sentencing record demonstrates his lack of understanding of the nature and consequences of the criminal proceedings against him – i.e.,

he believed that his lawyer and the prosecutor conspired against him and confused the present

offenses with events related to his 1986 manslaughter conviction for a fatal stabbing.[1]

"A defendant's competence is a question of fact, which we review for clear error." *Harries*

*v. Bell*, 417 F.3d 631, 635 (6th Cir. 2005).

> By statute, a defendant or the Government "may file a motion for a hearing to
> determine the mental competency of the defendant," and such a motion must be
> granted "if there is reasonable cause to believe that the defendant may presently be
> suffering from a mental disease or defect rendering him mentally incompetent to the
> extent that he is unable to understand the nature and consequences of the proceedings
> against him or to assist properly in his defense."

*United States v. Denkins*, 367 F.3d 537, 545 (6th Cir. 2004) (quoting 18 U.S.C. § 4241(a)). Even

in the absence of a motion, "the district court has not only the prerogative, but the duty, to inquire

into a defendant's competency whenever there is reasonable cause to believe that the defendant is

incompetent to stand trial." *Id*. (citation and internal quotation marks omitted). Pertinent to the

present appeal, subsection (e) of § 4241 provides:

> (e) Discharge. – When the director of the facility in which a defendant is hospitalized
> pursuant to subsection (d) determines that the defendant has recovered to such an
> extent that he is able to understand the nature and consequences of the proceedings
> against him and to assist properly in his defense, he shall promptly file a certificate
> to that effect with the clerk of the court that ordered the commitment. The clerk shall
> send a copy of the certificate to the defendant's counsel and to the attorney for the
> Government. The court shall hold a hearing, conducted pursuant to the provisions
> of section 4247(d), to determine the competency of the defendant. *If, after the*
> *hearing, the court finds by a preponderance of the evidence that the defendant has*
> *recovered to such an extent that he is able to understand the nature and*

---

[1]Willis had several prior adult criminal convictions, including a 1986 Kentucky conviction
for first-degree manslaughter stemming from a bar fight, during which he fatally stabbed the victim
six times.

> *consequences of the proceedings against him and to assist properly in his defense, the court shall order his immediate discharge from the facility in which he is hospitalized and shall set the date for trial or other proceedings.*

18 U.S.C. § 4241(e) (emphasis added).

"[T]he bar for incompetency is high: a criminal defendant must lack either a 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' or 'a rational as well as factual understanding of the proceedings against him.'" *United States v. Miller*, 531 F.3d 340, 350 (6th Cir. 2008) (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (internal quotation marks omitted)). In making this determination, the district court must consider several factors, including the defendant's demeanor, any prior medical opinion regarding competency, and evidence of irrational behavior. *Miller*, 531 F.3d at 348; *Williams v. Bordenkircher*, 696 F.2d 464, 466 (6th Cir. 1983). An attorney's opinion about his client's competency is likewise a relevant factor. *United States v. Tucker*, 204 F. App'x 518, 520 (6th Cir. 2006) (citing *Owens v. Sowders*, 661 F.2d 584, 586 (6th Cir. 1981)); *United States v. Jackson*, 179 F. App'x 921, 933 (6th Cir. 2006). Moreover, although a defendant may show signs of paranoia or other mental illness, "such an illness would not necessarily render [the] defendant incompetent to stand trial." *Miller*, 531 F.3d at 349 (citing *United States v. Davis*, 93 F.3d 1286, 1290 (6th Cir. 1996)). In short, "[t]here are . . . no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Williams*, 696 F.2d at 466 (quoting *Drope*, 420 U.S. at 180).

We find no clear error in the district court's determination, consistent with the diagnosis in the May 2007 forensic evaluation, that Willis was no longer suffering from a mental disease or defect that prevented him from understanding the nature and consequences of the proceedings against him or from assisting in his defense. The September 2006 and May 2007 forensic reports were not contradictory. The first report suggested that Willis's mental health could improve under controlled conditions; the second report indicated that Willis in fact regained his competency after undergoing treatment and close supervision at the federal medical center. At the competency hearing, defense counsel – the same attorney who initially questioned Willis's competency – did not challenge the May 2007 forensic evaluation and agreed with the district court that Willis was now competent to stand trial. In fact, there is no indication in the record that Willis's behavior during the trial raised competency concerns. Under these circumstances, the district court did not clearly err in finding Willis competent to stand trial. *See United States v. Baker*, No. 6:07-58-KKC, 2008 WL 138075, at *2 (E.D. Ky. Jan. 11, 2008) (finding that the defendant was competent to stand trial where there was no irrational or erratic conduct that would indicate a current competency deficit, the forensic report concluded that the defendant was competent, and defense counsel stipulated to the admissibility and substance of the report).

Moreover, contrary to Willis's claim, his behavior at sentencing did not signal a need to further evaluate his competency. Willis argues that in light of purportedly irrational comments he made during his allocution, the district court should have doubted his competency and required

additional evaluation.  In *United States v. Harlan*, 480 F.2d 515 (6th Cir. 1973), we considered and

rejected a similar argument.

In *Harlan*, the prosecutor filed a pre-trial motion for a mental examination of the defendant,

alleging that the defendant had a history of mental illness and institutionalization.  480 F.2d at 516.

The district court granted the motion, and Harlan was examined by psychiatrists at a federal facility.

*Id*.  The first of two resultant forensic reports deferred psychiatric diagnosis; the second report

concluded that Harlan was competent to stand trial.  *Id*.  At the subsequent competency hearing,

counsel for both parties, and Harlan himself, concurred in the findings in the forensic reports.  *Id*.

The district court therefore declared Harlan competent to stand trial, and Harlan subsequently entered

a guilty plea to a charge of armed bank robbery.  *Id*.  At the sentencing hearing, the court engaged

in a dialogue with Harlan and acknowledged that he had "some mental problem," but proceeded with

sentencing because neither of the psychiatric reports indicated that Harlan suffered from a psychosis.

*Id*.

On appeal, Harlan asserted that the district court erred in failing to inquire further into his

competency at the guilty plea and sentencing stages.  We disagreed:

> It is true that in its opinion in *United States v. Davis*, [365 F.2d 251 (6th Cir. 1966)],
> this Court stated that under the facts of that case the District Court had an obligation
> to hold another hearing, 365 F.2d at 255.  That opinion, however, also recognized the
> rule of *Beltran v. United States*, 302 F.2d 48, 50 (1st Cir. 1962), that a trial judge has
> no affirmative duty to conduct, *sua sponte*, a second inquiry into an accused's
> competency "unless the court is on notice that something is amiss."  *See Id.*

\* \* \*

> Significantly, most of the . . . factors [cited by the defendant] merely relate to Appellant's past and apparently persisting personality disorders, of which the District Court was made fully aware at the competency hearing through the psychiatric reports. Although these reports certainly did not give Appellant a clean bill of mental health, the one nonetheless recommended a finding of competency and the other deferred psychiatric diagnosis, and no contradictory evidence was presented to the Court at the competency hearing. With this competent and uncontradicted evidence supporting the District Court's finding of competency, we find no basis for upsetting that determination. *See Wolcott v. United States*, 407 F.2d 1149 (10th Cir.), cert. denied, 396 U.S. 879 (1969).

> Beyond the factors of which the District Court was thus fully aware at the competency hearing, it appears that only two episodes – the rejection by Appellant of an opportunity to plead guilty to the lesser offense of unarmed robbery and his statement at the sentencing hearing that he had experienced two "seizures" since he underwent psychiatric examination – might be said to have given the Court notice of a possible change in Appellant's condition subsequent to the competency hearing. We are unable to say that these episodes gave rise to an affirmative duty on the part of the Court to conduct, *sua sponte*, an additional inquiry into Appellant's competency and that the Court's failure to do so constituted prejudicial error, requiring that Appellant's guilty plea be set aside.

*Harlan*, 480 F.2d at 516-17; *see also Beltran*, 302 F.2d at 50 ("There can be no affirmative duty to investigate unless the court is on notice that something is amiss. Where the most recent word was a well-qualified medical report of present competency, an earlier contrary report does not seem to us to put the court on notice with respect to the present even though the court had endorsed an earlier report by formally finding it to be correct.").[2]

---

[2]*Cf. Denkins*, 367 F.3d at 547-48 (holding that the defendant's statements at his plea hearing that he suffered a head injury and associated mental problems were not so indicative of incompetency that the district court's acceptance of his plea violated due process, where there was no exhibition of irrational behavior or other evidence of incompetency, a professional evaluation confirmed the court's competency assessment, and the defendant and his counsel assured the court that the defendant understood the nature of the charges and consequences of the plea); *Miller*, 531 F.3d at 350 (holding that the district court did not err in failing to order *sua sponte* a competency

Under the present analogous circumstances, Willis's behavior at sentencing did not suggest that something was amiss so as to trigger an affirmative duty on the part of the district court to reevaluate his competency. Although Willis, when given the opportunity to allocute, made a rambling reference to the events surrounding his 1986 manslaughter conviction, his comments were insufficient to give the court cause to question his competency. Our review of the sentencing transcript shows that Willis was well-acquainted with the legal system and displayed a clear understanding of the current legal proceedings when he requested an appeal because he was dissatisfied with his attorney and protested the court's consideration of his violent propensities – specifically, his prior manslaughter conviction:

> [WILLIS]: All right. You're saying I had violence in this case, where is the violence at? I ain't been convicted of no violence.
>
> * * *
>
> [WILLIS]: I ain't trying to cause nothing over this, all I'm saying it's like this here: You're talking about something that I'm supposed to have done 20 years ago. Just because I'm charged with it now, I wasn't found guilty of it. You're taking and accusing me of something or you're judging me on something that I ain't been found guilty of. Now, if I was guilty of it or said I was guilty of it, now, 1992, yes, I pled guilty to a little stabbing charge there, and yes –
>
> [THE COURT]: I'm sorry, did you say a little stabbing charge?

---

hearing where defense counsel did not raise questions at or before trial regarding the defendant's mental health and the defendant, who exhibited symptoms of paranoia, demonstrated that he understood the proceedings by stating, in response to the court's question as to how he could afford to retain counsel, "I am borrowing the money from five different people. *This is my life that is on the line here . . . . If I lose, I am going to jail for a long time*.").

[WILLIS]: Yes, because it was barely right there, a little nick is the reason I said little stabbing charge.

[THE COURT]: Is this the one in the bar in Richmond that the man died?

[WILLIS]: That would be called a big stabbing charge.

[THE COURT]:Yeah, that would be a big one, wouldn't it, six times stabbing someone. It sure would.

[WILLIS]: Right.

Defense counsel did not raise any concerns regarding Willis's competency during the sentencing hearing.[3] In sum, with the benefit of two court-ordered psychiatric evaluations and competency hearings, the district court was well aware of Willis's mental health issues and was presented with no independent evidence to contradict the evaluators' findings that those problems were in remission and that Willis's competency was restored. We therefore conclude, under these circumstances, that the district court more than adequately protected Willis's due process rights and did not clearly err in its competency determination.

III.

Willis next claims that his sentence is substantively and procedurally unreasonable because the district court failed to grant a downward departure, pursuant to U.S.S.G. § 5K2.13,[4] from the

---

[3]*Cf. Tucker*, 204 F. App'x at 521 (holding that district court did not err in failing to hold competency hearing and noting that none of the defendant's successive lawyers expressed doubt about his competence before he pled guilty or at sentencing).

[4]Under U.S.S.G. § 5K2.13,

[a] downward departure may be warranted if (1) the defendant committed the offense

applicable Guidelines range in light of his mental disorder and borderline IQ. Willis admits, however, that he never moved for a downward departure, based upon diminished capacity, of his within-Guidelines sentence.

"[W]e do not review a district court's decision not to depart downward unless the record shows that the district court was unaware of, or did not understand, its discretion to make such a departure." *United States v. Santillana*, 540 F.3d 428, 431 (6th Cir. 2008). "[W]e presume that the district court understood its discretion, absent clear evidence to the contrary." *Id*. Absent such clear evidence, we review the district court's decision "only if (1) the sentence was imposed in violation of the law; (2) it was imposed as a result of an incorrect application of the guidelines; (3) the sentence represented an upward departure; or (4) the sentence was imposed for an offense for which there is no Sentencing Guideline and is plainly unreasonable." *Id*. (citations and internal quotation

---

while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

*See also United States v. Cole*, 359 F.3d 420, 430 (6th Cir. 2004).

marks omitted). If review is warranted, the plain error standard applies where the defendant failed to object to his sentence before the district court. *Id*. Further, even if review is unwarranted, "we are still free to review a defendant's claim that his sentence is excessive based on the district court's unreasonable analysis of the section 3553(a) factors in their totality." *Id*. (citation and internal quotation marks omitted).

The district court's decision not to depart is not reviewable. There is no clear evidence that the district court did not understand its discretion to make a downward departure. To the contrary, in imposing the maximum sentence within the Guidelines range, the court noted Willis's violent propensities and danger to the public – rendering him ineligible for the diminished capacity departure under § 5K2.13.

Willis has not otherwise shown that the district court plainly erred in imposing the sentence of life imprisonment or that this sentence was unreasonable. *See generally United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009); *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc).

IV.

For the foregoing reasons, we affirm Willis's convictions and sentence.