# Matter of M-W-, Respondent

*Decided April 9, 2012*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Pursuant to the categorical approach, a conviction for the aggravated felony of murder, as defined in section 101(a)(43)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A) (2006), includes a conviction for murder in violation of a statute requiring a showing that the perpetrator acted with extreme recklessness or a malignant heart, notwithstanding that the requisite mental state may have resulted from voluntary intoxication and that no intent to kill was established.

FOR RESPONDENT:  George E. Ward, Esquire, Canton, Michigan

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Brian C. Burgtorf, Assistant Chief Counsel

BEFORE:  Board Panel:  COLE, PAULEY, and WENDTLAND, Board Members.

PAULEY, Board Member:

In a decision dated November 23, 2010, an Immigration Judge found the respondent removable under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (2006), as an alien convicted of an aggravated felony, determined that he was not eligible for any relief from removal, and ordered him removed from the United States. The respondent has appealed from that decision. The principal issue in this case is whether the respondent was properly found removable as having been convicted of the aggravated felony of murder under section 101(a)(43)(A) of the Act, 8 U.S.C. § 1101(a)(43)(A) (2006). To answer this question we must define, at least partially, the scope of the "murder" aggravated felony, in particular where the State statute allows a conviction under some circumstances that do not involve an intent to kill. We conclude that the respondent was convicted of an aggravated felony and will dismiss his appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Poland who was admitted to the United States on July 20, 1982, as a refugee and adjusted his status to that

of a lawful permanent resident on August 2, 1983. The respondent was convicted in 2003 based on a no contest plea to two charges of second-degree murder under section 750.317 of the Michigan Compiled Laws. The two counts, which contain identical language except for the names of the victims, charged the respondent with killing an elderly couple. Specifically, the amended information charged that the respondent acted "with intent to kill, to do great bodily harm, or to act in wanton and willful disregard of the likelihood that the natural tendency of said act would cause death or great bodily harm."

The offense appears to have resulted from an early morning traffic incident in which the respondent rear-ended a car, killing the occupants on impact. Other counts to lesser offenses in the information indicate that the respondent was driving under the influence of alcohol.[1] Before the Immigration Judge and on appeal, the respondent explained that he pled no contest to the second-degree murder charges in exchange for a reduced sentence. Guilty judgments on two counts of second-degree murder were entered against him on March 18, 2003, and on April 11, 2003, he was sentenced to imprisonment for a period of 8 to 20 years.

The respondent was charged under section 237(a)(2)(A)(iii) of the Act as an alien convicted of an aggravated felony, specifically those defined at section 101(a)(43)(A) as "murder, rape, and sexual abuse of a minor" and at section 101(a)(43)(F) as a "crime of violence." The Immigration Judge found that the respondent's convictions satisfied both aggravated felony definitions. For the reasons that follow, we agree with the determination that a second-degree murder conviction under Michigan law constitutes an aggravated felony conviction under section 101(a)(43)(A) of the Act

---

[1] Both parties make arguments about the extent to which the respondent's blood alcohol level was over the legal limit, but we find it unnecessary to address these arguments in detail. We note that the information reflects that the respondent was also charged under section 257.625(4) of the Michigan Compiled Laws, which punishes homicides that are caused by persons driving under the influence of alcohol. Such statutes are commonly employed by States to cover traffic accidents related to "drunk driving." But a more serious charge may also be levied, up to and including second-degree murder. *See Delgado v. Holder*, 648 F.3d 1095, 1113 n.11 (9th Cir. 2011) (Reinhardt, J., concurring in part) (citing *People v. Watson*, 637 P.2d 279, 286 (Cal. 1981) (rejecting the argument that a vehicular homicide statute preempted a general murder statute, and finding that evidence that the defendant was legally intoxicated, drove at excessive speeds, ran a red light, and struck and killed an occupant in another vehicle was sufficient to show that he acted "wantonly and with a conscious disregard for human life")). We have no authority to go behind a conviction with regard to its validity under State law or to assess whether the facts met the State's discretionary criteria for pursuing murder charges, rather than some lesser charge, such as manslaughter.

because it is, categorically, a conviction for "murder." Since we find that the respondent is removable as an alien who has been convicted of an aggravated felony under section 101(a)(43)(A), we need not consider whether the conviction is also for a crime of violence within the meaning of section 101(a)(43)(F).

## II. STATUTE INVOLVED

Michigan, like many other States and the Federal Government, defines murder in two degrees. Section 750.316 of the Michigan Compiled Statutes defines murder in the first degree, in relevant part, as consisting of three types: (1) murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing; (2) murder committed in the perpetration of, or attempt to perpetrate, various enumerated offenses; and (3) murder of a peace officer or corrections officer who was engaged in the performance of his or her duties.

Second-degree murder is defined by section 750.317 of the Michigan Compiled Laws as encompassing "[a]ll other kinds of murder." *See also* 18 U.S.C. § 1111(a) (2006). The respondent and the Department of Homeland Security ("DHS") agree that in this case the murder was not premeditated or intentional,[2] and we observe that the doctrine of felony murder is also not applicable in this case.[3] Accordingly, we address only whether a certain type of murder conviction, not being of the felony-murder variety and requiring no intent to kill, satisfies the definition of murder for purposes of the aggravated felony definition at section 101(a)(43)(A) of the Act.

## III. ANALYSIS

### 1. Analytical Framework

When the Act was amended in 1988 to introduce the term "aggravated felony," murder was among the first crimes to be listed under the newly

---

[2] Pursuant to our request, the respondent and the DHS each submitted a supplemental brief addressing the proper approach to be taken in construing the meaning of the term "murder" as used in section 101(a)(43)(A), and the effect, if any, of evidence of voluntary intoxication on a defendant's mens rea.

[3] Killings committed in the course of or in flight from certain felonies are considered "murder" by statute and under the common law in the majority of United States jurisdictions. *See* Tom Stacy, *Changing Paradigms in the Law of Homicide*, 62 Ohio St. L.J. 1007, 1012 n.20 (2001); *see also Enmund v. Florida*, 458 U.S. 782 (1982). Although we have no cause to address this rule, we acknowledge that it is not without controversy.

created deportable offense covering aliens convicted of an aggravated felony. *See* Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, § 7342, 102 Stat. 4181, 4469-70 ("ADAA"); *Lettman v. Reno*, 207 F.3d 1368, 1370 (11th Cir. 2000); *Matter of A-A-*, 20 I&N Dec. 492, 495 (BIA 1992). However, the term "murder" has been in the Act since1952 as a bar to good moral character. *See* Immigration and Nationality Act, Pub. L. No. 82-414, § 101(f)(8), 66 Stat. 163, 172 (1952) (codified at 8 U.S.C. § 1101(f)(8) (1958)); *see also Taylor v. United States*, 231 F.2d 856 (5th Cir. 1956). We are aware of no cases or legislative sources explaining the intended scope of the term "murder" in these statutes. As regards the ADAA, it was introduced and passed by both the House of Representatives and the Senate between September and November 1988. During that period, the relevant legislative history does not reflect that the inclusion of "murder" as an aggravated felony in the Act was the subject of any amendment, and there was no extensive reporting or discussion of the term.

As the Immigration Judge noted, very little precedent construes the term "murder" in the aggravated felony definition at section 101(a)(43)(A) of the Act. Murder is a "generic" offense. *See Nijhawan v. Holder*, 129 S. Ct. 2294, 2298-2300 (2009) (noting that the term "aggravated felony," as used in the Act, may refer to so-called "generic" offenses subject to categorical definition or to "circumstance-specific" crimes that refer to the "specific way in which an offender committed the crime on a specific occasion"). Unlike other offenses that have been the subject of analysis by the Federal courts, murder has not diverged significantly from its common-law roots. *Cf. Taylor v. United States*, 495 U.S. 575, 593 (1990) (ascertaining the elements of the aggravated felony of burglary, which is likewise of common-law origin). Therefore, while we acknowledge the applicability of the type of analysis contemplated by the Supreme Court in *Taylor*, our task is somewhat simpler, given the existence of (1) a common-law definition of "murder" that remained stable until the adoption of the Model Penal Code, and (2) a Federal statute defining murder, namely, 18 U.S.C. § 1111(a). Although this Federal statute is a significant point of reference in defining the murder aggravated felony, it is not dispositive to our discussion since section 101(a)(43)(A) of the Act does not refer to it.[4] In invoking the *Taylor* methodology—examining, inter alia, common-law and State law to identify the "uniform, categorical definition[]" of an offense—our touchstone is the definition of the crime

---

[4] Other aggravated felony provisions expressly refer to offenses "described in" certain enumerated Federal statutes. *See, e.g.*, sections 101(a)(43)(E), (H), (I), (J), (L), (M)(ii), (N), (O), (P) of the Act.

of "murder" that Congress had in mind when it added that offense to the Act as an aggravated felony in 1988.[5] *Taylor v. United States*, 495 U.S. at 581-82, 587-77, 590.

### 2. Common-law and Federal Definitions of "Murder"—Malice

"Murder" is defined as the "killing of a human being with malice aforethought." *Black's Law Dictionary* 1043 (8th ed. 2004). This dictionary definition indicates that "state statutes" have adopted a degree structure through which first-degree murder is characterized by conduct that is "willful, deliberate, or premeditated," such as murder "by poisoning or by lying in wait." *Id.* All other types of murder, that is, those not "aggravated by any of the circumstances of first-degree murder," are generally considered to be second degree, or a lesser degree of murder, which is the type of murder at issue in this case. *Id.*

The Federal murder statute applicable in the special maritime and territorial jurisdiction, 18 U.S.C. § 1111(a), is substantially the same. As it did in 1988, this statute provides in relevant part:

> Murder is the unlawful killing of a human being with malice aforethought. Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate any [of various enumerated offenses]; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed, is murder in the first degree.
> Any other murder is murder in the second degree.

The concept of "malice aforethought," referenced in both the Federal and dictionary definitions, has been found in the common-law definition of "murder" since at least before the turn of the 16th century. *Mullaney v. Wilbur*, 421 U.S. 684, 692-93 & nn.13, 15 (1975) (distinguishing homicides

---

[5] We have nevertheless stated that in formulating the "generic" definition of a term appearing in the Act's list of "aggravated felonies," we should rely to a significant degree on the Federal definition of an offense, where available, because "removal proceedings are a function of Federal law." *Matter of Rodriguez-Rodriguez*, 22 I&N Dec. 991, 994-95 (BIA 1999). We also note that Congress is presumed to have been familiar with the Federal definition of murder when it enacted the ADAA. *See Dixon v. United States*, 548 U.S. 1, 2 (2006) (assuming that, when passing a statute, "Congress was familiar with the long-established common-law rule"); *Matter of Velazquez-Herrera*, 24 I&N Dec. 503, 509-10, 515 (BIA 2008) (citing *Gozlon-Peretz v. United States*, 498 U.S. 395, 407-08 (1991) (stating that the undefined term "supervised release" used in the 1986 amendments should be defined with reference to the well-established meaning of that term set forth in earlier statutes bearing on similar subject matter)).

committed without "'malice' prepensed" as being "manslaughter," which generally arises out of "sudden provocation"). "Malice aforethought was designated as the element that distinguished" murder from manslaughter, and it is integral to both first- and second-degree murder.[6] *Id.* at 693, 694-96 & n.17; *see also Davis v. United States*, 160 U.S. 469, 484-86 (1895), *superseded by statute on other grounds*, Insanity Defense Reform Act of 1984, Pub. L. No. 98-473, tit. II, § 402(a), 98 Stat. 1837, 2057; *Ornelas v. United States*, 236 F.2d 392, 394 (9th Cir. 1956) (construing 18 U.S.C. § 1111(a)). Integral to the concept of "malice" at common law was that the defendant "intended to take life," *or* that he had "a wicked, depraved, and malignant heart." *Davis v. United States*, 160 U.S. at 485. The concept was also understood at common law to encompass the situation where the defendant intended "to inflict great bodily harm." *Mullaney v. Wilbur*, 421 U.S. at 694.

"Malice aforethought" under the Federal murder statute also includes not only the intent to kill but also an intent to do serious bodily injury or an extreme recklessness and wanton disregard for human life ("depraved heart"). *United States v. Lemus-Gonzalez*, 563 F.3d 88, 92 (5th Cir. 2009); *United States v. Williams*, 342 F.3d 350, 356 (4th Cir. 2003); *United States v. Velazquez*, 246 F.3d 204, 214-15 (2d Cir. 2001) (collecting cases finding that intent to do serious bodily harm or extreme reckless disregard for human life can suffice to show malice). "Malice" can be shown through direct or circumstantial evidence and can be inferred by the jury from evidence of the nature of the victim's injuries or other circumstances of the crime, such as the choice of weapon. *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (second-degree murder prosecution); *United States v. Free*, 841 F.2d 321, 325 (9th Cir. 1988) (first-degree murder prosecution).

Contrary to the respondent's suggestion on appeal, it is clear that at common law and under the Federal murder statute, a murder conviction need not be limited to situations where the defendant acted with the "intent to kill." This is also true under most, if not all, modern approaches to the term. In fact, the United States Supreme Court has recognized that from a moral standpoint, those acting with an "intent to kill" are not necessarily "the most culpable" murderers. *Tison v. Arizona*, 481 U.S. 137, 157 (1987) (stating that "reckless indifference to the value of human life may be every bit as shocking to the moral sense as an 'intent to kill'").

---

[6] The presence of malice indicated the absence of justification for the homicide in the form of "heat of passion" or "sudden provocation." *Patterson v. New York*, 432 U.S. 197, 213 (1977).

### 3.  Reckless Conduct Constituting Murder

A "depraved heart" murder under Federal law is proven by conduct exhibiting more than gross negligence or ordinary recklessness. *United States v. Browner*, 889 F.2d 549, 553 (5th Cir. 1989) (explaining that "gross" or "criminal" negligence was far more serious than ordinary negligence, but "still falls short of that most extreme recklessness and wantonness required for 'depraved heart' malice"). The standard has been explained as "reckless and wanton conduct . . . which grossly deviated from a reasonable standard of care such that [the defendant] was aware of the serious risk of death." *United States v. Livoti*, 22 F. Supp. 2d 235, 243 (S.D.N.Y. 1998) (emphasis omitted). A person convicted of depraved heart murder under Federal law disregards a "'very high degree' of risk that death or serious bodily injury will result from the defendant's conduct." *Id.* at 245.

Since the Federal statute is essentially an adoption of the common law, this was true at common law as well. *See United States v. Browner*, 889 F.2d at 551; *see also Davis v. United States*, 160 U.S. at 484-86. Depraved heart killings or murders marked by extremely reckless conduct were precipitated by acts that carried a high likelihood of death or serious bodily injury, but were not aimed at anyone in particular. *Darry v. People*, 10 N.Y. 120 (N.Y. 1854) (discussing "depraved mind" murder prior to statutory amendment). The classic example of a depraved heart murder is the indiscriminate shooting into a crowd or an occupied building. *See Bethea v. Scully*, 834 F.2d 257, 260 (2d Cir. 1987) (noting that shooting into a crowd is the "archetype of reckless murder"); *see also Tucker v. United States*, 151 U.S. 164 (1894).[7]

---

[7] Examples of States that, in 1988, adhered to an essentially common-law, malice-based definition of murder consistent with the Federal statute are Arizona, California, the District of Columbia, Iowa, Kansas, Maryland, Massachusetts, Michigan, Nebraska, Nevada, New Jersey, North Carolina, Pennsylvania, Rhode Island, Tennessee, Utah, Vermont, Virginia, and West Virginia. *See, e.g.*, *State v. Walton*, 650 P.2d 1264, 1272-73 (Ariz. Ct. App. 1982) (intentionally causing death, knowingly acting to cause great bodily injury resulting in death, or engaging in reckless conduct showing extreme indifference to human life); *People v. Murray*, 275 Cal. Rptr. 498 (Cal. Ct. App. 1990); *Comber v. United States*, 584 A.2d 26 (D.C. 1990); *State v. Smith*, 242 N.W.2d 320 (Iowa 1976); *State v. McCown*, 957 P.2d 401 (Kan. 1998); *Gladden v. State*, 330 A.2d 176 (Md. 1974); *Commonwealth v. Sowell*, 494 N.E.2d 1359 (Mass. App. Ct. 1986); *State v. Thomas*, 769 N.W.2d 357, 364 (Neb. 2009) (discussing developments in Nebraska law regarding malice dating back to 1979); *Keys v. State*, 766 P.2d 270 (Nev. 1988); *State v. List*, 636 A.2d 1103 (N.J. Super. Ct. Law Div. 1990); *State v. Wilkerson*, 247 S.E.2d 905 (N.C. 1978); *Commonwealth v. Prosdocimo*, 578 A.2d 1273 (Pa. 1990); *State v. Iovino*, 554 A.2d 1037 (R.I. 1989); *State v. Cravens*, 764 S.W.2d 754 (Tenn. 1989); *State v. Standiford*, 769 P.2d 254 (Utah 1988)

(continued...)

We note that the use of the term "malice" has, at times, engendered confusion. *See State v. Thomas*, 769 N.W.2d 357, 364 (Neb. 2009) (discussing the fact that in 1979 the Nebraska legislature eliminated the requirement that a prosecutor must prove malice in a murder prosecution, but that courts continued to read this requirement into the law until 1998); *see also People v. Aaron*, 299 N.W.2d 304, 319 (Mich. 1980) (acknowledging confusion created by use of the term "malice aforethought"); *State v. Standiford*, 769 P.2d 254, 258 n.1 (Utah 1988) (noting Model Penal Code commentary on malice). Thus, although it does not alter our analysis, it is relevant to mention that the Model Penal Code, which has heavily influenced State legislatures over the last several decades, de-emphasizes reliance on the term "malice." *See* Model Penal Code § 210.2 cmt. 1 (1980) (discussing offense-specific definitions in Part II of the Model Penal Code in 1980).

The Model Penal Code defines "murder" as a class of criminal homicide that is committed either (1) purposely or knowingly, or (2) recklessly under circumstances manifesting extreme indifference to the value of human life.[8] Model Penal Code § 210.2(1). The creation of the "reckless/extreme indifference" definition was viewed by the Model Penal Code drafters as providing needed clarification to the term "depraved heart." *See O'Brien v. State*, 45 P.3d 225, 231-32 (Wyo. 2002) (citing Model Penal Code § 210.2(1)(b) cmt. 4).[9] The degree of recklessness sufficient to support a murder conviction under the Model Penal Code was extreme recklessness beyond the "ordinary recklessness" that would support a manslaughter conviction and was all but indistinguishable from homicides that are committed purposefully or knowingly. *Id.*

---

(...continued)

(intentionally or knowingly causing death, intentionally causing great bodily injury, depraved indifference); *Thomas v. Commonwealth*, 41 S.E.2d 476 (Va. 1947); *State v. Starkey*, 244 S.E.2d 219 (W. Va. 1978), *overruled on other grounds by State v. Guthrie*, 461 S.E.2d 163 (W. Va. 1995).

[8] Examples of States that, as of 1988, adopted the above Model Penal Code definitions to a significant degree are Florida, New Hampshire, New York, South Dakota, Washington, and Wisconsin. *See Hooker v. State*, 497 So.2d 982 (Fla. Dist. Ct. App. 1986); *State v. Dufield*, 549 A.2d 1205 (N.H. 1988); *State v. Lyerla*, 424 N.W.2d 908 (S.D. 1988); *State v. Dunbar*, 817 P.2d 1360 (Wash. 1991); *State v. Spears*, 433 N.W.2d 595 (Wis. Ct. App. 1988).

[9] The drafters of the Model Penal Code elected not to include "intent to cause grievous bodily harm" in their description of the mens rea for murder. *See State v. Russell*, 733 P.2d 162, 173 (Utah 1987) (Stewart, J., concurring) (citing Model Penal Code § 210.2 cmt. 5 at 28-29 (1980)).

### 4. Defense of Intoxication Negating Mens Rea

While the mens rea standard for murder under the common law and Federal law would encompass extremely reckless behavior, generally courts have *not* endorsed the position advanced by many defendants convicted of murder in the course of driving under the influence, namely, that they were too intoxicated to form the requisite mens rea of recklessness. *See United States v. Fleming*, 739 F.2d 945, 948 (4th Cir. 1984); *Kane v. United States*, 399 F.2d 730, 736 (9th Cir. 1968) (convicting of manslaughter despite intoxication). The Model Penal Code also has addressed the viability of a line of defense using evidence of voluntary intoxication to negate the formation of a reckless state of mind and has rejected it. The Code provides that "[w]hen recklessness establishes an element of the offense, if the actor, due to self-induced intoxication, is unaware of a risk of which he would have been aware had he been sober, such awareness is immaterial." *See* Model Penal Code § 2.08(2).[10]

The unavailability of the argument that intoxication prevented the formation of a malicious state of mind has been criticized by some commentators. *See, e.g.*, Katherine M. White, Note, *Drunk Driving as Second-Degree Murder in Michigan*, 41 Wayne L. Rev. 1433 (1995). However, in many jurisdictions, including Michigan,[11] the criticism has been to no avail. *See* 2 Wayne R. LaFave, Substantive Criminal Law § 9.5(c) (2d ed. 2003).

### 5. Definition of Murder Applicable to Unintentional Killings

Therefore on the basic question whether extremely reckless conduct can support a murder conviction under a generic definition, we note the fundamental consistency of the common law, Federal, and Model Penal Code approaches set forth above. That is, "depraved mind murder," which has been described as "outrageously reckless conduct" committed with "wantonness or total indifference for the value of human life" is substantially similar to murders marked by "extreme indifference to the value of human life." *State v. Reed*, 120 P.3d 447, 454-55 (N.M. 2005). Furthermore, evidence of voluntary intoxication does not prevent a conclusion that the defendant had the capacity to act with a depraved heart or extreme indifference to human life.

---

[10] Several States have stand-alone statutes barring consideration of voluntary intoxication in the determination of mens rea. *See Montana v. Egelhoff*, 518 U.S. 37, 48-49 (1996).

[11] *See infra* note 13.

### 6. Michigan Statute and Jurisprudence on Murder

Although the Michigan murder statutes do not contain the term "malice aforethought," applicable precedent has long dictated that every murder conviction under either section 750.316 or 750.317 of the Michigan Compiled Laws includes, as an element, proof that the defendant acted with "malice aforethought." *People v. Brown*, 358 N.W.2d 592, 597 (Mich. Ct. App. 1984) (citing *People v. Aaron*, 299 N.W.2d 304 (Mich. 1980); *People v. Potter*, 5 Mich. 1 (1858)). Malice aforethought is as much an element of second-degree murder in Michigan as it is an element of first-degree murder. *People v. Roper*, 777 N.W.2d 483, 490 (Mich. Ct. App. 2009).[12]

Under Michigan law, malice is defined as "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* at 490 (quoting *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998)) (internal quotation marks omitted). "The offense of second-degree murder does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences." *Id.* (quoting *People v. Mayhew*, 600 N.W.2d 370, 379 (Mich. Ct. App. 1999)) (internal quotation marks omitted). Proof of malice can be obtained through circumstantial evidence, as well as by direct evidence. *People v. Goecke*, 579 N.W.2d at 880; *see also Dillard v. Prelesnik*, 156 F. Supp. 2d 798, 805-06 (E.D. Mich. 2001). The Michigan Supreme Court has recognized that malice can be implied from the circumstances of a crime, stating that if the circumstances "demonstrate an abandoned and malignant heart, [t]his simply means that malice may be implied when the defendant does an act with a high probability that it will result in death and does it with a base antisocial motive and with wanton disregard for human life." *People v. Goecke*, 579 N.W.2d at 880 (quoting *People v. Fuller*, 150 Cal. Rptr. 515, 521 (Cal. Ct. App. 1978)) (internal quotation mark omitted).

---

[12] Nothing in the Michigan legislative history indicates that its definition of murder has substantially changed since 1988. In fact, the definition appears to have remained fairly constant over at least the last 150 years. *See People v. Potter*, 5 Mich. at 4 ("Murder is where a person of sound memory and discretion unlawfully kills any reasonable creature in being, in the peace of the state, with malice prepense or aforethought, either express or implied."). Jury instructions were amended in or about 1983, however, to de-emphasize use of the word "malice" and to use instead the statutory mens rea terms: intent to kill, to cause great bodily harm, or to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *People v. Woods*, 331 N.W.2d 707, 727 (Mich. 1983).

Establishing malice under Michigan law does not require the showing of a specific intent to kill, yet the courts have stated that proving wanton and willful disregard of the likelihood of death or great bodily harm "differs little in the scale of moral blameworthiness from an actual intent to cause such harm." *Id.* at 879. The recklessness required for a murder conviction is of a degree greater than that required for a manslaughter conviction, in that for murder, the prosecutor must show that the defendant performed an act in wanton and willful disregard of the risk that the *natural tendency* of such act was death or great bodily injury. *Id.* at 880 (noting also that "malice requires egregious circumstances"). For manslaughter, the defendant is only reckless as to the *possibility* that death or serious bodily harm *may* ensue. In Michigan, a defendant's evidence of voluntary intoxication does not prevent the prosecution from proving that the defendant acted with extreme recklessness. *Id.* at 878-79 & n.26.[13]

### 7. Respondent's Appeal

We conclude that under Michigan law, the respondent was found to have killed another human being with malice aforethought, matching the generic elements of the crime of murder. Whether or not he was voluntarily intoxicated at the time has no bearing on the fact that he was determined through a judgment of guilt to have acted in wanton and willful disregard of the likelihood that the natural tendency of his actions was to cause death or great bodily harm. We are therefore unpersuaded by the respondent's argument that we should not consider his convictions to fall under section 101(a)(43)(A) of the Act because in Michigan, a prosecutor need not establish that a defendant had an "intent to kill." While this is true, the operative mens rea in both the generic definition of murder and under Michigan law is substantially the same—malice aforethought or a minimum of extreme recklessness as to the serious risk or natural consequence of death or serious bodily injury as a result of the defendant's actions.

Moreover, in both the generic definition and under Michigan law, malice can be shown by proving a reckless and wanton disregard for human life or the intent to do great bodily harm. The Michigan Supreme Court has long

---

[13] The Michigan Supreme Court noted that this was true regardless of whether it treated the wanton and willful disregard standard as an objective one (as the prosecution urged in that case) or as a subjective one. *People v. Goecke*, 579 N.W.2d at 878-79 & n.26. We note that the case did not turn on the question whether the standard is subjectively or objectively derived and that in addressing it, the court appeared mainly concerned with establishing the unavailability of an intoxication-related defense to a charge of second-degree murder that arose out of grossly reckless conduct.

recognized that "if a mortal blow was malicious, although not given with intent to kill, or if death ensued from an act accompanying an unlawful collateral act, or under circumstances which showed general malice, such as a reckless disregard of the safety or lives of others, the killing would be murder." *People v. Potter*, 5 Mich. at 4 (explaining that the purpose behind enactment of the statute specifying degrees of murder was to "separate," for purposes of punishment, first-degree murder offenses); *accord People v. Garcia*, 247 N.W.2d 547 (Mich. 1976), *abrogated on other grounds*, *Strickland v. Washington*, 466 U.S. 668 (1984) (regarding ineffective assistance of counsel). While the intent to kill is an element of first-degree premeditated murder in Michigan, it is not an element of the offense of second-degree murder, of which the respondent was convicted. *People v. Garcia*, 247 N.W.2d at 550 (stating that "first degree murder . . . requir[es] an intention to take life"). Even absent a requirement that a prosecutor must prove an intent to kill, a conviction for second-degree murder under section 750.317 of the Michigan statutes is nonetheless categorically one for "murder" as defined in section 101(a)(43)(A) of the Act, because it conforms to the generic definition of that term.

We are also unpersuaded by the respondent's argument that the Immigration Judge's decision to sustain the charge of removability under section 237(a)(2)(A)(iii) of the Act violates the Supreme Court's decision in *Leocal v. Ashcroft*, 543 U.S. 1 (2004). As to the question whether a second-degree murder conviction in Michigan constitutes an aggravated felony conviction under section 101(a)(43)(A) of the Act, the *Leocal* decision has no impact. Indeed, one of the reasons for having separate aggravated felony branches covering murder and crimes of violence is that murder may be committed through nonviolent means. *See Rummel v. Estelle*, 445 U.S. 263, 282 n.27 (1980) ("Caesar's death at the hands of Brutus and his fellow conspirators was undoubtedly violent; the death of Hamlet's father at the hands of his brother, Claudius, by poison, was not."). Furthermore, the respondent's argument would appear to exclude felony murder provisions, which were in 1988, and currently are, part and parcel of the Federal approach, as well as a great majority of State murder statutes. We therefore reject the respondent's argument since it appears to confuse the requirements for finding an aggravated felony under section 101(a)(43)(A) of the Act with *Leocal*'s analysis of crimes of violence under section 101(a)(43)(F).[14]

---

[14] We also cannot credit the respondent's argument that attacks the validity of his convictions on the basis of an asserted violation of the Supreme Court's decision in *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). Any challenge to the convictions that rests

(continued...)

In light of the foregoing and the Immigration Judge's finding that the respondent was sentenced to concurrent sentences of 8 to 20 years for the two second-degree murder convictions, we agree with the Immigration Judge that the respondent has been convicted of an aggravated felony and a particularly serious crime. He is therefore ineligible for asylum or withholding of removal under the Act. Sections 208(b)(2)(B)(i), 241(b)(3)(B)(ii) of the Act, 8 U.S.C. §§ 1158(b)(2)(B)(i), 1231(b)(3)(B)(ii) (2006).

The respondent's remaining application for relief is for deferral of removal to Poland under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988). We concur with the Immigration Judge's finding that the respondent failed to offer sufficient evidence to show that he faces a clear probability of torture at the instigation of, or with the consent or acquiescence of, government officials or persons acting in an official capacity.[15] A public official's acquiescence to torture "requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7) (2011). The respondent has not shown that anyone in the Polish Government would consent or acquiesce (including the concept of willful blindness) to his torture, and he is therefore not entitled to relief under the Convention Against Torture.

Accordingly, the respondent's appeal will be dismissed.

**ORDER:** The appeal is dismissed.

---

(...continued)

on ineffective assistance of counsel must be brought to the State of Michigan in an appropriate motion seeking to overturn or vacate the convictions based on constitutional defects. We are unable to go beyond the convictions to assess their validity. *See Matter of Roberts*, 20 I&N Dec. 294, 301 (BIA 1991).

[15] We note that the respondent does not specifically address this issue in his brief on appeal.