[DO NOT PUBLISH]

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-12951

Non-Argument Calendar

_____

JOSE RUMILDO CANALES HERNANDEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A044-006-492

_____

Before WILLIAM PRYOR, Chief Judge, JORDAN and NEWSOM, Circuit Judges.

PER CURIAM:

This appeal presents the issue whether a conviction for second degree murder under North Carolina law, N.C. Gen. Stat. § 14-17(b), categorically qualifies as an aggravated felony under the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(A). Jose Canales Hernandez petitions for review of an order affirming his removal to Honduras on the ground that his prior conviction under section 14-17(b) satisfied the generic definition of murder in *Matter of M-W-*, 25 I. & N. Dec. 748 (BIA 2012), *pet. for review denied*, *Wadja v. Holder*, 727 F. 3d 457 (6th Cir. 2013). *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Hernandez argues that the generic definition, which requires malice aforethought, does not encompass his prior conviction for second degree murder, which requires malice and excludes premeditation and deliberation. Because both malice and malice aforethought include homicide with an intent to kill and willful acts perpetrated with extreme recklessness and wanton disregard for human life that cause the death of another, Hernandez's prior conviction categorically qualifies as an aggravated felony. We deny his petition.

Hernandez, a native and citizen of Honduras, became a lawful permanent resident of the United States in 1993. In 2013, Hernandez pleaded guilty in a North Carolina court to second degree murder for "kill[ing] another living human being, Carlos

Velasquez, with malice." N.C. Gen. Stat. § 14-17(b)(1). Hernandez also pleaded guilty to felony hit and run for "fail[ing] to immediately stop the vehicle [he] was driving at the scene of an accident and collision" with Velasquez. *Id.* § 20-166.

The Department of Homeland Security charged Hernandez as removable for being "convicted of an aggravated felony, . . . a crime of violence . . . for which the term of imprisonment ordered is at least one year . . . after [his] admission" to the United States. 8 U.S.C. § 1227(a)(2)(A)(iii). Hernandez contested removability and moved to terminate his removal proceedings.

The immigration judge denied Hernandez's motion to terminate on the ground that his prior conviction qualified as an aggravated felony. "[T]urning to [Hernandez's] conviction . . . [of] second degree murder in North Carolina as defined . . . as the unlawful killing of a human being with malice but without premeditation and deliberation," the immigration judge found that "definition . . . [was] a categorical match" to "the generic definition of murder." *See id.* § 1101(a)(43)(A). The immigration judge "also f[ound] that [Hernandez's] conviction document showed that he was sentenced to a term of 100 to 132 months for the offense[,] satisfying the requirement that he be sentenced to at least one year of imprisonment for his conviction" to constitute a crime of violence. *See id.* § 1101(a)(43)(F). After Hernandez conceded that he was ineligible for relief from removal, the immigration judge ordered Hernandez removed to Honduras.

The Board "agree[d] with the Immigration Judge's determination that a second-degree murder conviction under North Carolina law constitutes an aggravated felony conviction . . . because it is, categorically, a conviction for murder" under *M-W-*, 25 I. & N. Dec. at 752–53, 756. The Board reasoned that, "given that [Hernandez]'s second-degree murder conviction require[d] the unlawful killing of another human being with malice—which may be shown in all of the ways that malice [could] be proven under [the] generic definition of murder [in *M-W-*]—it is clear that [he] has been convicted of murder . . . [under] the Act." And based on its "conclusion that [Hernandez was] removable as an alien who has been convicted of the aggravated felony of murder[,] . . . [the Board declined to] consider whether the . . . conviction [was] also a crime of violence." The Board dismissed Hernandez's appeal.

We review *de novo* the Board's decision to classify Hernandez's conviction as an aggravated felony. *See Quinchia v. U.S. Att'y Gen.*, 552 F.3d 1255, 1258 (11th Cir. 2008). We "defer to the [Board]'s interpretation of a statute if it is reasonable and does not contradict the clear intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). "In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844.

The Board based its decision on *Matter of M-W-*, in which it interpreted the aggravated felony of "murder"—a term undefined in the Immigration and Nationality Act. 25 I. & N. Dec. at 751–56.

In *M-W-*, the Board defined murder as a homicide with "malice aforethought," which "includes not only the intent to kill but also an intent to do serious bodily injury or an extreme recklessness and wanton disregard for human life ('depraved heart')." *Id.* at 752–53. The Board explained that "[d]epraved heart killings or murders marked by extremely reckless conduct [are] precipitated by acts that carr[y] a high likelihood of death or serious bodily injury, but [are] not aimed at anyone in particular." *Id.* at 754.

Hernandez argues that the Board erred by using the generic definition of murder in *M-W-* instead of the federal statutory definition of murder, 8 U.S.C. § 1111(a), but we must defer to the Board's interpretation of the term. The Immigration and Nationality Act does not define "murder." *See Chevron*, 467 U.S. at 843 ("the agency, must give effect to the unambiguously expressed intent of Congress"). And as the Board highlighted in *M-W-*, Congress declined to refer to any legislative definition of murder. 25 I. & N. Dec. at 751. So we accept the "[a]gency interpretation [as] reasonable and controlling unless it is arbitrary, capricious, or manifestly contrary to the statute." *Dawson v. Scott*, 50 F.3d 884, 887 (11th Cir. 1995) (internal quotation marks omitted). Hernandez does not dispute that the Board's definition is reasonable.

We compare the Board's generic definition to the North Carolina crime of second degree murder. Its four elements are "(1) the unlawful killing, (2) of another human being, (3) with malice, but (4) without premeditation and deliberation." *State v. Arrington*, 819 S.E.2d 329, 332 (N.C. 2018). In North Carolina, malice

means "(1) actual malice, meaning hatred, ill-will or spite; (2) an inherently dangerous act done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief; or (3) that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification." *Id.* (internal quotation marks omitted). "While an intent to kill is not a necessary element of second degree murder, the crime does not exist in the absence of some intentional act sufficient to show malice and which proximately causes death." *State v. Wilkerson*, 247 S.E.2d 905, 917 (N.C. 1978).

The categorical approach governs our determination whether Hernandez's prior conviction for second degree murder constitutes an aggravated felony under the Immigration and Nationality Act. *See Francisco v. U.S. Att'y Gen.*, 884 F.3d 1120, 1126–27 (11th Cir. 2018). Under the categorical approach, we "compare the elements of the statute forming the basis of the [alien]'s conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254, 257 (2013). The categorical approach requires us to "confine our consideration only to the fact of conviction and the statutory definition of the offense." *Aspilaire v. U.S. Att'y Gen.*, 992 F.3d 1248, 1253 (11th Cir. 2021), *cert. denied sub nom. Aspilaire v. Garland*, 142 S. Ct. 765 (2022). "Because we examine what the state conviction necessarily involved, not the facts underlying the case, we must presume that the conviction rested upon nothing more than

the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190–91 (2013) (internal quotation marks omitted and alterations adopted).

Hernandez's prior conviction categorically qualifies as an aggravated felony. Like the generic definition of murder provided in *M-W-*, section 14-17 requires an unlawful killing of a human being and an intent to kill or depraved recklessness or wantonness. *See M-W-*, 25 I. & N. Dec. at 756 ("'[D]epraved mind murder,' which has been described as 'outrageously reckless conduct' committed with 'wantonness or total indifference for the value of human life' is substantially similar to murders marked by 'extreme indifference to the value of human life.'"); *Arrington*, 819 S.E.2d at 332. It is of no moment that second degree murder in North Carolina includes "actual malice" because that phrase, like the generic definition of murder, requires the performance of "some intentional act . . . which proximately causes death," even if the homicide is committed with extreme recklessness or "utterly without regard for human life and social duty and deliberately bent on mischief." *See Wilkerson*, 247 S.E.2d at 917; *M-W-*, 25 I. & N. Dec. at 754. And the form of recklessness that constitutes malice in North Carolina is narrower than the requirement in the generic definition of "extreme recklessness and wanton disregard for human life" because the cause of the death must be "inherently dangerous" in addition to being performed with extreme recklessness. *See Arrington*, 819 S.E.2d at 332; *M-W-*, 25 I. & N. Dec. at 752–53. *See also Santana-*

*Felix v. Barr*, 924 F.3d 51, 56–57 (2d Cir. 2019) (concluding that a New York conviction for conspiracy in the second degree to commit second-degree murder constituted the aggravated felony of murder under 8 U.S.C. § 1101(a)(43)(A)).

Hernandez argues that *United States v. Fleming*, 739 F.2d 945 (4th Cir. 1984), establishes that the agency misclassified his prior conviction as an aggravated felony. But we are not bound by the decisions of other circuits. *Springer v. Wal-Mart Associates' Grp. Health Plan*, 908 F.2d 897, 900 n.1 (11th Cir. 1990). Furthermore, in *Fleming* the defendant argued that his homicide by drunk driving lacked the malice aforethought to qualify as second degree murder under the federal statute, 18 U.S.C. § 1111(a). 739 F.2d at 947–48. *Fleming* is inapplicable to Hernandez, who was convicted of a state crime, and unhelpful to his cause because the Fourth Circuit rejected the defendant's argument.

We **DENY** Hernandez's petition.